

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

In re

MICHAEL HENRY LETOURNEAU
and FELIZA LETOURNEAU

        Debtor.
_____/

Case No. 12-12204-A-13
DC No. KDG-5

## MEMORANDUM DECISION REGARDING SECOND INTERIM APPLICATION FOR COMPENSATION

      Chapter 13 attorneys are entitled to reasonable compensation for services rendered. Klein DeNatale represents Michael and Feliza Letourneau, a self-employed landscaper and a postal employee, in a Chapter 13. Three attorneys and two paralegals worked on the case. Time billed included secretarial time at $125 per hour, administrative time at attorney rates and, in at least one category of tasks, internal conferences that occupy almost one-third of the total time spent. Klein DeNatale's fees total $29,683.00. Are the fees reasonable?

**Factual and Procedural History**

      Michael Letourneau is a self-employed landscaper; his wife, Feliza Letourneau, is an employee of the United States Postal Service. Mr. Letourneau has been self-employed since January 2012. Prior to that date he was a partner in Golden West Landscaping. The partnership ended badly in December 2011, amidst a third party's allegations of embezzlement against Letourneau's former partner's wife.

      Unable to pay their debts, the Letourneaus sought the assistance of Klein DeNatale, who assigned three lawyers and two paralegals to the case. It recommended that the Letourneaus file

a Chapter 13 bankruptcy. The Letourneaus agreed and each signed a letter fee agreement, which provided for representation on an hourly basis.

In March 2012, the Letourneaus filed for Chapter 13 protection. Schedules, statements and a plan, as well as a motion to value landscaping equipment, were filed on the date of the petition.

After the meeting of creditors, Chapter 13 trustee Michael H. Meyer objected to confirmation, citing the failure of: (1) the plan to satisfy the liquidation analysis; (2) the plan to resolve priority claims; (3) the debtors to file applicable tax returns; (4) the plan to include all of the debtors' projected disposable income; (5) the plan to be feasible; and (6) the plan to pay creditors within the 60-month maximum duration.

Coupled with the objection was Chapter 13 trustee Michael H. Meyer's Motion to Dismiss for unreasonable delay prejudicial to creditors, in which he argued that the case should be dismissed because the debtors had failed to: (1) file 2011 income tax returns; (2) provide the trustee with the profit and loss statements for the six months prior to filing; and (3) provide evidence of income for the six months prior to filing.

Axis Capital, whose collateral the motion sought to value, opposed the valuation motion based on a lack of supporting evidence and objected to confirmation based on the failure to pay its secured claim in full.

Thereafter, the Letourneaus withdrew their motion to value.

The Chapter 13 trustee withdrew his motion to dismiss before a written response was required of the debtors.

Letourneaus withdrew their plan and motion to value, filed Amended Schedules B, E, F and J, Amended Form B22C, a First Amended Chapter 13 Plan and a Motion to Confirm the First Amended Chapter 13 Plan. At the hearing on confirmation, the court denied confirmation because: (1) the motion was improperly noticed; (2) the debtors failed to carry their burden of proof that the plan complied with the elements of § 1325(a); (3) the motion was supported by late-filed declarations; and (4) a lack of showing of feasibility.

Thereafter, Letourneaus filed further amended schedules, as well as a Second Amended

Chapter 13 Plan and a Motion to Confirm the Second Amended Chapter 13 Plan. The motion was granted and the plan confirmed.

Klein DeNatale filed its Second Interim Application for Compensation.[1] Between March 1, and October 21, 2012, Klein DeNatale billed 165.4 hours, which it contends entitles it to a fee of $29,683.00.[2] After offering a courtesy discount of $2,727.30, the firm seeks compensation of $26,955.70. It also prays reimbursement of costs of $780.30. The application is supported by the debtors; neither the Chapter 13 trustee, nor any creditor, has filed opposition to the fee application.

### Jurisdiction

This court has jurisdiction. 28 U.S.C. § 157 and § 1334 and General Order No. 182 for the U.S. District Court for the Eastern District of California. This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Venue is proper. 28 U.S.C. § 1409.

### Discussion

I.　**11 U.S.C. § 330: Reasonable Compensation**

A Chapter 13 debtor's lawyer is entitled to reasonable compensation for "actual, necessary services" and reimbursement for "actual, necessary expenses." 11 U.S.C. § 330(a)(1). The applicant bears the burden of proof. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *In re Roderick Timber Co.*, 185 B.R. 601, 606 (B.A.P. 9th Cir. 1995). In fixing the amount of a reasonable fee the court shall consider all relevant factors. 11 U.S.C. § 330(a)(3)(A)-(F).

Unless the attorney agrees to accept a flat rate fee, the customary method for ascertaining a reasonable fee for debtor's counsel in a Chapter 13 case is the lodestar, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *In re Eliapo*, 468 F.3d 592, 598 (9th Cir. 2006). The hourly rate should be commensurate with compensation received by comparably skilled attorneys in other practice areas. 11 U.S.C. § 330(a)(3)(F); *In re*

---

[1]　The First Interim Motion for Compensation was denied without prejudice.

[2]　This amount does not include $2,264.00 that the applicant received prior to the date of the petition. *See,* Second Interim Application for Fees and Expenses by Attorneys ¶5(b), November 6, 2012, ECF No. 90.

3

*Manoa Fin. Co., Inc.*, 853 F.2d 687, 690 (9th Cir. 1988); *see also, In re Fleming Cos., Inc.*, 304 B.R. 85, 92-93 (Bankr. D. Del. 2003). The number of hours billed must be well documented and may not include: (1) non-compensable time, such as time spent on secretarial or administrative tasks, *see, Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989); (2) hours that were duplicative, unproductive, excessive or otherwise unnecessary, 11 U.S.C. § 330(a)(4)(A); *In re Sullivan,* 454 B.R. 1, 4 (D. Mass. 2011); and (3) entries demonstrating that the applicant has failed to exercise prudent billing judgment, *Hensley,* 461 U.S. at 434; *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.,* 924 F.2d 955 (9th Cir. 1991).

While the lodestar is the primary method for determining fees, it is neither the exclusive, nor mandatory, method for doing so. *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.,* 924 F.2d 955 (9th Cir. 1991). Departure from the lodestar is appropriate where: (1) the fee applications or supporting billing records are inadequate, *Unsecured Creditors' Committee* at 960; (2) the fee sought is disproportionate to the potential benefit to the estate, *In re Strand,* 375 F.3d 854 (9th Cir. 2004); (3) the application of the lodestar would not yield a numerically precise fee award, *Unsecured Creditors' Committee* at 960; or (4) the professional has not exercised prudent billing judgment, *Hensley at 434; In re Parreira,* 464 B.R. 410 (Bankr. E.D. Cal. 2012).

**II.    Departure from the lodestar**

    **A.    Hourly rates**

The applicant prays compensation for attorneys at rates of $225-$265 per hour and for paralegals at $125 per hour. Second Interim Application ¶9, November 6, 2012, ECF No. 90. There is no admissible evidence in support of the rates sought. *See,* Declaration of Jacob L. Eaton in Support of Second Interim Application for Fees and Expenses by Attorneys ¶¶7, 11, November 6, 2012, ECF No. 92 (containing conclusions). As a consequence, the court finds that the applicant has not sustained its burden of proof. Beyond that, the court finds not credible the suggestion that the paralegal's work is properly charged at 55% of the rate for the primary attorney in the case.

    **B.    Hours expended**

Klein DeNatale's billing practices have systemic problems. But by way of illustration,

the court offers the following examples. First, Klein DeNatale billed secretarial time at the rate of $125 per hour. Secretarial time is not billable. *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989). Using the task category of "Preparation of Voluntary Petition, Schedules, Statement of Financial Affairs and Means Test" portion of the invoice[3] as an illustration, secretarial time billed as paralegal time totaled 6.6 hours of 16.7 hours of non-attorney time recorded.[4] Examples include time spent on March 13, 2012, "Prepare Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys" 0.30 hours. Exh. D, p. 3. Though re-typed in this instance, see Rights and Responsibilities, March 14, 2012, ECF No. 7, this is a form prescribed by the Eastern District of California, EDC-3-096, requiring the addition of only the case name and number, the initial fees charged and the amount paid prior to filing the petition. Another example of secretarial time billed occurred on March 17, 2012 "Prepared letter to clients *delivering* Chapter 13 Documents..." 0.30 hours. Exh. D., p. 3. These are not isolated incidents. The applicant has billed for: instructing the clients to take the post-petition financial management course and for reviewing the certificates of completion; preparation of proofs of service, preparation of transmittal letters, withdrawal of motions, notices of stay, and other secretarial functions, such as revising and finalizing documents.[5] Other entries are less clear and may be secretarial time or

---

[3] Unless otherwise indicated all citations to the record are to Exhibit D of Supplemental Exhibits in Support of Second Interim Application for Fees and Expenses, December 26, 2012, ECF No. 106.

[4] The specific time entries on Exhibit D, pp. 2-3, wherein paralegal Isabel Medellin performed duties that were primarily secretarial in nature but were billed as paralegal time are: March 7, 2012-2.3 (time spent "revising" schedules and statements); March 13, 2012-0.1 (conference with attorney regarding "retainer balance") ; March 13, 2012-0.3 (preparation of rights and responsibilities); March 13, 2012-0.2 (preparation of attachment to rights and responsibilities); March 13, 2012-2.2 ("finalizing" schedules and statements); March 14, 2012-0.8 (revised schedules and plan); March 14, 2012-0.4 ("Prepared documents for filing including conference with Jacob Eaton"); and March 17, 2012-0.3 (prepared transmittal letter).

[5] The specific entries to which reference is made are Exhibit D, "Communication with Clients and Third Parties regarding Administrative Issues," p. 4, entries: April 9, 2012-0.20, April 9, 2012-0.2, April 27, 2012-0.10; "Preparation of Amendments" p. 6, entries: May 24, 2012-0.30, and June 5, 2012-0.20; "Preparation of Documents Requested by Chapter 13 Trustee"

might be appropriately charged as paralegal time. Consider the entry on March 13, 2012, "Conference with clients to review and approve schedules and statement of financial affairs" 1.5 hours. Exh. D, p. 3.

Second, the applicant has billed non-compensable administrative time. *See, Missouri,* 491 U.S. at 288, fn. 10. Not even task performed is billable. Only those that require specialized knowledge or the exercise of independent judgment are chargeable. The invoice contains the following entry on March 19, 2012, "Reviewed and signed letter to Michael and Feliza Letourneau *delivering* voluntary petition, schedules, statement of financial affairs, and means test, Chapter 13 plan and order re Chapter 13 Plan payments to clients." Exhibit D, p. 3. (emphasis added). Similarly, March 22, April 23, and May 25, 2012, each contain the entry, "Reviewed and categorized time entries for fee application." Exhibit D, p. 14.

Third, there are excessive amounts of time devoted to internal communications. As but one example is the category of billing described as "Communications regarding Partnership Issues Concerning Debtor and Golden West Landscaping." In that category internal communications accounted for all but one-third (5.0 of 15.8 hours) of the total time spent. Exhibit D, pp. 6-9. Aside from the question of whether the case warranted the assignment of three lawyers and two paralegals, even when the moving party operates with just one lawyer and one paralegal, an excessive amount of time is devoted to internal communications.

Fourth, the applicant has engaged in an unnecessary duplication of work in the form of work performed by the paralegal followed by excessive attorney review and revision. 11 U.S.C. § 330(a)(4)(A)(I); *see e.g. In re Pacific Sea Farms, Inc.,* 134 B.R. 11, 16 (Bankr. D. Hawaii 1991) (disallowing excessive review of pleadings). Consider the task category of "Preparation of Voluntary Petition, Schedules, Statement of Financial Affairs and Means Test" portion of the

---

pp. 9-10, March 30, 2012-1.4, and May 16, 2012-1.2; "Motion to Dismiss by Chapter 13 Trustee" p. 12, entry: April 26, 2012-0.30; "Preparation of Chapter 13 Plan, dated March 14, 2012" p. 18, entry April 9, 2012-0.30; "Objection to Chapter 13 Plan filed March 14, 2012" p. 19 entry May 21, 2012-0.30; "First Amended Chapter 13 Plan filed June 27, 2012" p. 21, entry July 19, 2012-0.20; and "Litigation" p. 23, entry March 14, 2012-0.7 (apparently California Judicial Council Form CM 180).

invoice as an illustration. After removing secretarial time, allowed paralegal time totaled 10.1 hours (16.7-6.6 hours secretarial time). Attorney's time reviewing and revising paralegal time totaled 9.1 hours.[6] Reduced to its simplest terms, the attorney spent nearly an hour reviewing every hour worked by the paralegal.

Fifth, Klein DeNatale has not exercised prudent billing judgment. One such example is that it billed for time beyond the scope of their fee agreement. *In re Strand,* 375 F.3d 854, 860 (9th Cir. 2004) (requiring services to be authorized). In this case, the applicant has specifically disclaimed the obligation to provide tax advice. The fee agreement signed by the parties provides, "Furthermore, it must be understood that the firm is not being retained to give tax advice as to the ramification of any and all transactions and events involved in the representation, and you acknowledge and have been advised to seek independent tax advice and procure its own [sic] tax representation accordingly." Exhibit B, p. 24, ¶1 of Exhibits in Support of Second Interim Application for Fees and Expenses by Attorneys, November 6, 2012, ECF No. 93. Notwithstanding this disclaimer, the applicant billed $4,352.50 for "Tax Issues." Second Interim Application for Fees and Expenses by Attorneys, November 6, 2012, ECF No. 90.

Another example is the continued defense of state court actions after the petition was filed. One such action was against the partnership; another such action was a collection action. Compensation sought is $1,965, the majority of which occurred after the date of the petition. The applicant notes that it continued this work in the partnership action because "...Debtors did not want a judgment to be entered against the Partnership because it would result in Mr. Letourneau being liability (sic) for a claim against him as a partner." Supplemental Declaration of Jacob Easton in Support of Second Interim Application for Fees and Expenses by Attorneys ¶31, December 26, 2012, ECF No. 107. The applicant fails to appreciate the impact of the stay and the discharge. 11 U.S.C. §§ 362(a), 524(a), 1328. The majority of the post-petition litigation

---

[6] The specific time entries for Jacob Eaton that pertain to reviewing and revising paralegal work are: March 5, 2012-1.20; March 8, 2012-0.30; March 8, 2012-0.80; March 9, 2012-0.80; March 9, 2012-1.20; March 12, 2012-0.20; March 13, 2012-2.00; March 13, 2012-0.80; March 13, 2012-1.00; and March 14, 2012-0.80.

work was unnecessary.

Sixth, Klein DeNatale fails to account for its own unproductive work. To its credit, the applicant has not billed work associated with the preparation of the Second Amended Chapter 13 Plan. But even so, legal services associated with preparing and confirming the debtors' plans totaled $6,855.00.[7] This amount includes unproductive time on the part of counsel. Giving the applicant the benefit of the doubt, some of the reasons that the plan could not be confirmed earlier were the fault of the debtors. Other flaws belong to the applicant, e.g. failure of the plan to meet liquidation, failure to fund in 60 months and improper noticing of confirmation motions.

Carefully crafted and well-implemented billing protocols ensure that a firm does not, even inadvertently, bill for time that is non-compensable, duplicative or unproductive. When followed these protocols result in an invoice, which provides an objective basis from a reasonable fee may be set. When such procedures have not been well crafted or have not been strictly followed, the firm's internal billing records do not provide a reliable basis from which to fix a reasonable fee. In this case, the court has identified six indicators that show the lack of adherence to rigid billing protocols. The full extent of these problems cannot be ascertained from the invoices submitted. But the problems are sufficiently pervasive to render the billing records suspect and to abandon the lodestar as a means of calculating a reasonable fee.

### III.   Establishing a reasonable fee for services rendered

Unable to rely on the lodestar, the court adopts the across the board reduction approach described in *In re Strand*, 375 F.3d 854, 857 (9th Cir. 2004).

As the court does so, it is mindful of the following factors. The first is the size and complexity of the case. *In Wheeler*, 439 B.R. 107, 111 (Bankr. E. D. Mich. 2010) (noting complexity of the case a proper factor for consideration in Chapter 13 compensation motions). This is a business Chapter 13 bankruptcy. One debtor earns wages; the other is self-employed.

---

[7] That amount is comprised of: (1) Preparation of Chapter 13 Plan dated March 14, 2012-$2,502.50; (2) Objection to Chapter 13 Plan filed March 14, 2012-$705.00; (3) First Amended Chapter 13 Plan dated June 27, 2012-$2,817.50; and (4) Second Amended Chapter 13 Plan dated July 30, 2012-$830.00.

Though beyond the typical business Chapter 13 case, it is only modestly difficult. Eligibility has never been an issue. The primary objection came from the Chapter 13 trustee who interposed elemental confirmation objections pertaining to the debtors' failure to meet the elements of 11 U.S.C. § 1325(a)-(b) and who sought additional documentation.

Klein DeNatale argues that three particular problems associated with the Letourneaus' partnership termination just prior to the date of the petition are the source of these higher than usual fees: (1) ascertaining the true state of the debtors' assets and past income, for scheduling and means testing purposes; (2) projecting income to fund a plan going forward; and (3) ensuring that partnership accounts receivable were collected and used to pay down partnership tax debt, which reduces the tax debt to be paid through the plan. Its point is well taken but overstated. Each of these issues did make the case more difficult and the court will grant the applicant some leeway on fees. Fees associated with these issues are predominantly found in the: (1) preparation of the petition, schedules and statements; (2) amendments to those documents; and (3) partnership issues. These total $8,491.50.[8] Giving the applicant the full benefit of the doubt and also adding all of the time associated with the "Preparation of Documents Requested by Chapter 13 Trustee" of $3,165.00, the total is $11,656.50, which accounts for only 39% of fees billed.

Second, the court considers the stage of the case. The applicant seeks fees from March 1, 2012, through October 21, 2012. In context, this case has just passed plan confirmation, which ordinarily happens in the first few months of the case.

Third, this case was not acrimonious. Only one creditor objected to plan confirmation and that objection was quickly resolved. The primary opponent in this case was the Chapter 13 trustee, who pointed out elemental problems with the debtors' plan. No adversary proceeding has

---

[8] This is derived by adding the "Preparation of Voluntary Petition, Schedules, Statement of Financial Affairs, and Means Test" of $4,855.00 and "Preparation of Amendments" of $829.00, which totals $5,684.00, Exhibit D, pp. 2-3, 5-6 of Supplemental Exhibits in Support of Second Interim Application for Fees and Expenses, December 26, 2012, ECF No. 106, and subtracting secretarial time of $825.00 (6.6 hours x $125 per hour), and adding $3,632.50 for partnership issues. Exhibit D, pp. 2-3, 5-6 of Supplemental Exhibits in Support of Second Interim Application for Fees and Expenses, December 26, 2012, ECF No. 106.

9

been filed.

Fourth, Klein DeNatale was paid $2,264.00 prior to the petition for services rendered in conjunction with this case. And these fees are not being considered in this fee application, but which raises the total compensation by $2,264.00.

For these reasons, the court will award Klein DeNatale interim compensation of 60% of the amount prayed or $17,809.80 and all of the costs prayed, which are $780.30. To the extent that the application seeks fees above that amount the court finds that Klein DeNatale has not carried its burden of proof.

## Conclusion

The motion will be granted in part and denied in part without prejudice. Fees of $17,809.80 and costs of $780.30 are granted on an interim basis. Prior to the close of the case, Klein DeNatale will make a final application for compensation, at which time the court may adjust the award. The remainder of the application is denied without prejudice, and Klein DeNatale may reapply for those fees prior to the final application. Any such motion shall address the issues described herein and shall not include fees or costs associated with making the motion. The moving party shall prepare and lodge an order consistent with the findings herein and, upon execution thereof, may draw on any retainer held.

Dated: February 14, 2013

Fredrick E. Clement
United States Bankruptcy Judge

1  service list for 12-12204

2  Jacob L. Eaton, Esq.
   KLEIN, DENATALE, GOLDNER,
3   COOPER, ROSENLIEB & KIMBALL
   4550 California Avenue, Second Floor
4  Bakersfield, CA 93309

5  Michael and Feliza Letourneau
   17442 Kranenburg Avenue
6  Bakersfield, CA 93314

7  Michael H. Meyer
   Chapter 13 Trustee
8  P. O. Box 28950
   Fresno, CA 93729-8950

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28